IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

KAREN BRANCH, mother and
legal guardian of HOLLY TOLIVER,
an incapacitated person                                    PLAINTIFF


v.                              Case No. 05-5188


CAMP BARNABAS,
BARNABAS FOUNDATION,
PAUL TEAS, Co-founder and
Executive Director, and
CYNDY TEAS, Co-founder and
Director of Developmental/Medical Services                 DEFENDANTS

### ORDER

Now on the 6th day of October, 2006, comes on for consideration the defendants' **Motion to Dismiss Amended Complaint (doc. 22)**. The Court, being well and sufficiently advised, finds and orders as follows with respect thereto:

1. The plaintiff, Karen Branch, mother and legal guardian of Holly Toliver, an incapacitated person (hereinafter called "Holly"), filed this action against the defendants for negligence and outrage resulting from alleged injuries suffered by Holly Toliver while she was a camper at Camp Barnabas.

The defendants now move to dismiss the plaintiff's complaint, asserting that the Court lacks personal jurisdiction over them.

2. The following facts are undisputed in this matter:

1

* Barnabas Foundation, Inc., d/b/a Camp Barnabas ("Barnabas"), is a non-profit corporation, organized under the laws of Missouri and doing business under the laws of the State of Missouri. The principal place of business of Barnabas is Missouri.

* Barnabas operates a summer camp for the disabled in Purdy, Missouri.

* Paul Teas and Cyndy Teas are residents and citizens of Purdy, Barry County, Missouri.

* Holly attended the summer camp operated by Barnabas in Purdy, Missouri.

* Holly was transported to Missouri for the camp by Karen Branch.

* The plaintiff asserts that Holly was injured while she attended the summer camp in Missouri. Holly's alleged injury and the alleged consequences of the injury serve as the basis for plaintiff's negligence and outrage claims.

3. Further, the plaintiff has set forth the following allegations in support of her contention that personal jurisdiction exists:

* The defendants conduct yearly or bi-annual recruiting missions to Ouachita Baptist University in Arkadelphia, Arkansas in order to recruit potential campers, as well as volunteers from the state of Arkansas.

2

\* The plaintiff learned of the defendants through a relative and professor at Ouachita Baptist University, Arkadelphia, Arkansas, upon one of the defendants' recruiting missions to the university.

\* The defendants have run television advertisements, on local channel, 40/29 KHBS/KHOG, to recruit campers and volunteers. The television advertisements are broadcast within KHBS/KHOG's viewing area, including, but not limited to, Benton, Franklin, Logan, Madison, Sebastian and Washington Counties in Arkansas.

4. "When personal jurisdiction is challenged, plaintiff has the burden to show that jurisdiction exists." Burlington Industries Inc. v. Maples Industries, 97 F.3d 1100, 1102 (8th Cir. 1996) (citation omitted). "[T]he burden does not shift to the party challenging jurisdiction." Gould v. P.T. Krakatau Steel, 957 F.2d 573, 575 (8th Cir.), *cert. denied* 506 U.S. 908 (1992), citing Newhard, Cook & Co. v. Inspired Life Centers, Inc., 895 F.2d 1226, 1228 (8th Cir. 1990).

In line with the foregoing authorities, the plaintiff has the burden of making a prima facie showing of this Court's jurisdiction over the defendants. *See* First National Bank of Lewisville, Arkansas v. First National Bank of Clinton, Kentucky, 258 F.3d 727, 729 (8th Cir. 2001); Falkirk Min. Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 373 (8th Cir. 1990). Moreover,

3

"[d]etermining whether jurisdiction exists over an out-of-state defendant involves two inquiries: (1) whether a forum's long-arm statute permits the assertion of jurisdiction and (2) whether assertion of personal jurisdiction violates federal due process." Graphics Controls Corp. v. Utah Med. Prods., Inc., 149 F.3d 1382, 1385 (Fed. Cir. 1998)(footnote omitted).

Because Arkansas' long-arm statute permits the assertion of jurisdiction to the extent permitted by the Due Process Clause, Ark. Code Ann. § 16-4-101(B) (Supp. 1995); *see also* Kilcrease v. Butler, 293 Ark. 454, 455, 739 S.W.2d 139 (1987), the sole inquiry this Court need make is whether the exercise of personal jurisdiction is consistent with the due process clause[1]. *See* 3D Systems, Inc. V. Aarotech Laboratories, Inc., 160 F.3d 1373, 1377 (Fed. Cir. 1998); *see also* Epps v. Stewart Information Services Corp., 327 F.3d 642, 647 (8th Cir. 2003).

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has no meaningful 'contacts, ties, or relations.'" Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72 (1985)(quotation omitted). Due process requires sufficient "minimum contacts" between the defendant and the forum state so that "maintenance of the suit does not offend traditional notions of fair

---

[1] Courts are to apply the "minimum contacts" standard developed in International Shoe and its progeny. Hilderbrand v. Steck Mfg. Co., Inc., 279 F.Supp.2d 1351, 1355 (Fed.Cir. Feb. 7, 2002).

4

play and substantial justice." World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 291-92 (1980).

To satisfy its burden, a plaintiff asserting jurisdiction must establish either specific jurisdiction or general jurisdiction. Merck & Co., Inc. v. Barr Lab., Inc., 179 F.Supp.2d 368, 371 (D.Del. 2002); Mason v. Mooney Aircraft Corp., 2003 WL 21244160 (W.D. Missouri)(Slip Opinion)(May 8, 2003)(explaining differences in two concepts).

Specific jurisdiction arises when the particular cause of action arose from the defendant's activities within the forum state; general jurisdiction arises when the defendant has continuous and systematic contacts with the state, irrespective of whether defendant's connections are related to the particular cause of action. Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414 (1984); *see also* Viam Corp. V. Iowa Export-Import Trading Co., 84 F.3d 424, 427 (Fed. Cir. 1996)(specific jurisdiction distinguished from general jurisdiction; general jurisdiction where defendant's contacts at issue have no necessary relationship to the cause of action). Before addressing the issue specifically, it is important to review the authorities governing the two types of jurisdiction.

(a) General Personal Jurisdiction -- Due process focuses on the fundamental fairness of exercising jurisdiction over a nonresident defendant, and therefore, "it is essential in each case

5

that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958).

The United States Supreme Court has held that to maintain general jurisdiction over a foreign defendant, the facts must establish "substantial" or "continuous and systematic general business contacts" with the forum state. Helicopteros, 466 U.S. at 416. Such affiliations are construed in light of the Due Process Clause which permits the Court to exercise jurisdiction only if doing so would not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). That is, a defendant must "reasonably anticipate being haled into court" in the remote forum. World-Wide Volkswagon Corp. v. Woodson, 444 U.S. 286, 297 (1980). While lack of physical presence in a state cannot alone defeat jurisdiction, "random," "fortuitous," or "attenuated" contacts do not count in the minimum contacts calculus. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). If a party is amenable to general jurisdiction, then it can be said that it has such numerous contacts with the forum that it may be haled into court in that forum even for a suit not arising out of its forum contacts. *See* Helicopteros, 466 U.S. at 416.

A showing of contacts alone, however, is not enough; a foreign defendant may still defeat jurisdiction by marshaling a compelling

case that its exercise would be unreasonable or contrary to concepts of fair play and substantial justice. Viam Corp., 84 F.3d at 429. "The test of unreasonableness is a multi-factored balancing test that weighs any burdens on the defendant, against various countervailing considerations, including the plaintiff's interest in a convenient forum and the forum state's interest in resolving conflicts flowing from in-state events." Id., citing Burger King Corp. v. Rudzewicz, 471 U.S. at 477. For these reasons, a "plaintiff must show significantly more than mere minimum contacts to establish general jurisdiction." Molnlycke Health Care AB v. Dumex Medical Surgical Prod., Ltd., 64 F.Supp.2d 448, 450 (E.D. Pa. 1999).

Once defendants' contacts with the forum have been established, the Court considers the following factors in deciding whether to exercise jurisdiction:

    (1) the nature and quality of defendants' contacts with the forum state;

    (2) the quantity of such contacts;

    (3) the relation of the cause of action to the contacts;

    (4) the interest of the forum state in providing a forum for its residents; and

    (5) the convenience of the parties.

Epps, 327 F.3d at 648, citing Burlington Industries, Inc. v. Maple Industries, Inc., 97 F.3d 1100, 1102 (8th Cir. 1996)(addt'l

citations omitted). In applying these factors, the central inquiry is the "relationship among the defendant, the forum and the litigation." Land-O-Nod Co. v. Bassett Furniture, Inc., 708 F.2d 1338, 1340 (8th Cir. 1983)(quoting Shaffer v. Heitner, 433 U.S. 186, 204 (1977)).

Finally, even where a jurisdictional threshold can be established, "personal jurisdiction may be defeated if its exercise would be unreasonable" and in making this determination, the Court considers factors such as

> (a) the burden on the defendant; (b) the interest of the forum state; (c) the plaintiff's interest in obtaining relief; (d) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (e) the shared interest of the several states in furthering fundamental substantive social policy.

Asahi, 480 U.S. at 113-14; Falkirk Mining Co. v. Japan Steel Works, Ltd., 906 F.2d 369, 374 (8th Cir. 1990).

(b) <u>Specific Personal Jurisdiction</u> – Specific personal jurisdiction is distinguished from general personal jurisdiction in that specific jurisdiction usually refers to a "situation in which the cause of action arises directly from the defendant's contacts with the forum State." Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424 (C.A. Fed. 1996).

5.  In light of the foregoing authorities and considerations, the Court will examine each of the plaintiff's contentions in support of personal jurisdiction.

\*   First, the plaintiff contends that the defendants conduct yearly or bi-annual recruiting missions to Ouachita Baptist University in Arkadelphia, Arkansas in order to recruit potential campers, as well as volunteers from the state of Arkansas.  Further, the plaintiff asserts that she first learned of the defendants through a relative and professor at Ouachita Baptist University, in Arkadelphia, Arkansas, after one of the defendants' recruiting missions to the university.

The defendants strongly deny that recruiting missions *ever* occurred in the state of Arkansas.  The defendants support their denial with the Affidavit of Cynthia Teas which states that

> Neither Barnabas Foundation nor any of its employees or agents nor Paul Teas nor Cynthia Teas conduct yearly or bi-annual recruiting missions to Ouachita Baptist University in Arkadelphia, Arkansas.

The affidavit further states that

> On one occasion it is believed that the wife of a Barnabas Foundation employee was at an OBU alumni function in Arkadelphia and discussed Camp Barnabas with some of the attendees.  However, to the best of my knowledge this was not an official recruiting visit for volunteer counselors and in no event was it a recruiting visit for campers.

Plaintiff disputes defendants' statements -- and supports her argument with an affidavit from both the plaintiff and Holly's

9

grandmother in which they state that they learned of Barnabas in 1998 through a professor at Ouachita Baptist University following a "recruiting trip". However, even if this point were to be resolved in plaintiff's favor, the Court believes that a single "recruiting trip" in 1998 is *de minimis* contact, at best, and would be insufficient to support the exercise of personal jurisdiction over the defendants.

\*   Plaintiff also argues that defendants have run television advertisements on local channel 40/29, KHBS/KHOG, to recruit campers and volunteers. She asserts that the television advertisements were broadcast within KHBS/KHOG's viewing area, including, but not limited to, Benton, Franklin, Logan, Madison, Sebastian and Washington Counties in Arkansas. Plaintiff supports her contention with the affidavits of Karen Branch, Brooke Blatchley, and Steve Maher. These affidavits state that each affiant witnessed television commercials on ABC Channel 40/29 that included photographs of both Camp Barnabas and the Strong Law Firm -- which firm provides legal representation for Barnabas.

Defendants again strongly contend that they do not directly advertise or promote its services in the State of Arkansas. Cyndy Teas has affirmed that Barnabas has never advertised on any television station including ABC 40/29 KHBS/KHOG in Northwest Arkansas. Although the defendants do admit to being in television advertisements purchased by and for the Strong Law Firm, Steven

Harrell of the Strong Law Firm has affirmed that it never advertised on ABC 40/29 KHBS/KHOG or any other Arkansas television station. Further, the defendants have supplied the Court with the affidavit of Mark McGeary, the General Sales Manager for ABC 40/29 KHBS/KHOG. According to McGeary, he has reviewed the station's sales records since 2002, and neither the Strong Law Firm nor the defendants have purchased or run advertisements on KHBS/KHOG.

In light of the foregoing, the Court is extremely doubtful that plaintiff can show, as fact, that even a single television advertisement was shown on an Arkansas Television station. Leaving aside the issue of whether any of the affiants would have a motive to lie about the matter, the records of the station whereon plaintiff's affiants allegedly saw the commercials in question are said (by an affiant who is not involved in this case) to show that no such commercials were ever purchased from that station nor shown thereon. Based on this evidence, the Court does not believe plaintiff has met her burden of showing that such "contacts" occurred so as to warrant the exercise of personal jurisdiction in this case.

Accordingly, **Motion to Dismiss Amended Complaint (doc. 22)** should be, and hereby is, **granted** and the plaintiff's complaint is dismissed for want of jurisdiction.

IT IS SO ORDERED.

<pre>                                /s/ Jimm Larry Hendren
                                UNITED STATES DISTRICT JUDGE</pre>